## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| EQM MIDSTREAM PARTNERS, LP, | : **SECURITIES EXCHANGE ACT OF** |
| THOMAS F. KARAM, MICHAEL A. | : **1934** |
| BRYSON, KENNETH M. BURKE, DIANA | : |
| M. CHARLETTA, ROBERT J. COOPER, | : **JURY TRIAL DEMANDED** |
| KIRK R. OLIVER, AND LARA E. | : |
| WASHINGTON, | : |
| | : |
| Defendants. | : |

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against EQM Midstream Partners, LP, ("EQM or the "Company") and the members EQM's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between EQM and Equitrans Midstream Corporation and its affiliates ("Equitrans").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on March 30, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company unitholders. The Registration Statement recommends that the Company's unitholders vote in favor of a proposed transaction whereby Equitrans will acquire all of the outstanding common units representing limited partner interests in EQM that Equitrans and its subsidiaries do not already own, and whereby LS Merger Sub, LLC, a Delaware limited liability company and a wholly-owned subsidiary of EQM LP Corporation, will be merged with and into EQM, with EQM surviving as a wholly-owned subsidiary of Equitrans (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each EQM unitholder will receive 2.44 shares of Equitrans (the "Merger Consideration").

3. As discussed below, Defendants have asked EQM's unitholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's Conflicts Committee's financial advisor, Evercore Partners L.L.P. ("Evercore"), in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's unitholders prior to the forthcoming unitholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to EQM's unitholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because EQM is formed in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of EQM units and has held such units since prior to the wrongs complained of herein.

10. Individual Defendant Thomas F. Karam ("Karam") has served as a member of the Board since October 2018 and is the Chairman of the Board. Karam is also the President and Chief Executive Officer of Equitrans.

11. Individual Defendant Michael A. Bryson has served as a member of the Board since May 2012.

12. Individual Defendant Kenneth M. Burke has served as a member of the Board since September 2018.

13. Individual Defendant Diana M. Charletta has served as a member of the Board since October 2018.

14. Individual Defendant Robert J. Cooper has served as a member of the Board since January 2019.

15. Individual Defendant Kirk R. Oliver has served as a member of the Board since October 2018.

16. Individual Defendant Lara E. Washington has served as a member of the Board since February 2013.

17. Defendant EQM is a Delaware limited partnership and maintains its principal offices at 2200 Energy Drive, Canonsburg, Pennsylvania 15317. The Company's stock trades on the New York Stock Exchange under the symbol "EQM."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. **The Proposed Transaction**

20. EQM owns, operates, acquires, and develops midstream assets in the Appalachian Basin. It operates through three segments: Gathering, Transmission, and Water. As of December 31, 2018, the Company owned approximately 700 miles of high-pressure gathering lines and 1,500 miles of Federal Energy Regulatory Commission (FERC) regulated low-pressure gathering lines; approximately 950 miles of FERC regulated interstate pipelines; and approximately 160 miles of pipelines. It serves local distribution companies, marketers, producers, utilities, and other customers primarily in Pennsylvania, West Virginia, and Ohio. The Company was

formerly known as EQT Midstream Partners, LP and changed its name to EQM Midstream Partners, LP in October 2018. EQM is based in Canonsburg, Pennsylvania. EQM operates as a subsidiary of Equitrans.

21.     On February 27, 2020, the Company and Equitrans jointly announced the Proposed Transaction:

> CANONSBURG, Pa.--(BUSINESS WIRE)--Equitrans Midstream Corporation (NYSE: ETRN) and EQM Midstream Partners, LP (NYSE: EQM), today, announced the following actions and information, along with ETRN's pro forma financial and capital expenditure forecast:
>
> - EQM and EQT Corporation (EQT) executed a 15-year gas gathering agreement covering Pennsylvania and West Virginia
> - Minimum Volume Commitment (MVC) steps-up to 3.0 Bcf per day and incremental MVC increases begin with Mountain Valley Pipeline's (MVP) in-service
> - Present value, using 10% discount rate (PV10), of MVC revenue is approximately $2.1 billion higher under new 15-year gathering agreement than under prior MVCs with EQT
> - ETRN forecasts greater than 70% of total revenue from firm reservation fees and MVCs beginning in 2021
> - EQT benefits include the ability to optimize combo development, lower per unit costs over time, and easing of approximately $250 million of letter-of-credit posting requirements
> - ETRN will purchase and retire 25.3 million shares of ETRN common stock from EQT for $52 million of upfront cash, with the remaining consideration, which represents $196 million PV10, to be paid through reduced gathering fees in the two years following MVP's in-service
> - ETRN to acquire all outstanding public EQM common units in a 100% share-for-unit transaction, approved by the EQM Conflicts Committee, in which each outstanding public common unit of EQM would be exchanged for 2.44 shares of ETRN common stock
> - ETRN intends to pay a $0.60 per share annual dividend, which allows the company to quickly de-lever and provides significant forecasted cash flow after total capital expenditures and dividends
> - ETRN forecasts $1.8 billion of cumulative free cash flow and $1.0 billion of cumulative retained free cash flow, each a non-GAAP supplemental financial measure, over 2021-2023

"Today is a transformational day for E-Train. We are taking actions designed to rapidly and materially strengthen our balance sheet," said Thomas F. Karam, ETRN chairman and chief executive officer. "We have executed a 'blend, broaden, and extend' contract with EQT, which will strengthen our partnership and position both companies for success over the long-term.

"In addition, we are simplifying our structure to a single C-Corp, as well as acquiring 25.3 million shares of ETRN from EQT. As a single C-Corp entity, E-Train will have transparent corporate governance, a larger investor base, and will strive to be among the leading ESG companies in the midstream sector," Karam continued.

Diana Charletta, ETRN president and chief operating officer, added "The new gathering agreement with EQT replaces over a dozen separate gathering agreements and serves to strengthen our ongoing partnership, a scenario that will be beneficial for both companies now and in the future. By simplifying our relationship, EQT can effectively execute their combo-development strategy, which in turn will lead to improved ETRN capital efficiency through better planning and optimized system designs. Equitrans' world-class operations, coupled with our remarkably stable cash flows, simple structure, and transparent path forward supports our ongoing commitment to deliver shareholder value."

See the Non-GAAP Disclosures section of this news release for important disclosures regarding the non-GAAP supplemental financial measures included in this news release, including information regarding their most comparable GAAP financial measures.

* * *

**ETRN Proposed Acquisition of EQM**

ETRN and EQM have agreed to a share-for-unit exchange via merger (Merger) in which each outstanding public common unit of EQM would be exchanged for 2.44 shares of ETRN common stock. The exchange ratio represents a 3% premium based on the volume weighted average price for EQM and ETRN over the 20 days ending February 26, 2020. The Merger is expected to close mid-year 2020, subject to customary closing conditions and the approval of ETRN shareholders and EQM unitholders.

> After giving effect to the Merger and the purchase of 25.3 million ETRN common shares from EQT, there will be approximately 430 million ETRN common shares outstanding. Pro forma for the transactions, the remaining 25.3 million ETRN common shares owned by EQT will represent approximately 6% of total ETRN common shares outstanding.
>
> Other highlights of the Merger include:
>
> - EQM will become a wholly owned subsidiary of ETRN upon the closing of the Merger
> - ETRN projects near zero cash taxes through at least 2023 and minimal cash taxes through at least 2026
> - The simplified C-Corp structure is expected to generate a broader investor base and the increased float is expected to improve trading liquidity
> - Single C-Corp public security provides enhanced corporate governance
> - Increased opportunity for additional index inclusions
>
> The terms of the Merger were negotiated, reviewed, and approved by the Conflicts Committee of the Board of Directors of the general partner of EQM and approved by the Board of Directors of the general partner of EQM and the Board of Directors of ETRN. The EQM Conflicts Committee is composed of independent members of the Board of Directors of EQM's general partner. The Merger is subject to approval by ETRN shareholders and EQM unitholders.
>
> Citi and Guggenheim Securities, LLC acted as financial advisors and Latham & Watkins LLP acted as legal advisor to ETRN. Evercore acted as financial advisor and Richards, Layton & Finger, P.A. acted as legal advisor to the Conflicts Committee of EQM.

*  *  *

22.     The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that EQM's unitholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming unitholder vote.

B.     **The Materially Incomplete and Misleading Registration Statement**

23.    On March 30, 2020, EQM and Equitrans jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's unitholders and solicits the unitholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's unitholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's unitholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24.    The Registration Statement fails to provide material information concerning financial projections by management and relied upon by Evercore in its analyses. The Registration Statement discloses management-prepared financial projections for the Company, Equitrans, and the Pro Forma Combined Company, which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation and pro forma valuation of the Company. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is

replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2020 through 2023: Adjusted EBITDA, Distributable Cash Flow, Distributable Cash Flow Per Share, and Distributable Cash Flow Per Unit, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that unitholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

28.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

29.     With respect to the Evercore's *Peer Group Trading Analysis* for EQM, the Registration Statement fails to disclose the individual multiples Evercore utilized for each of the companies included in the analysis. *See* Registration Statement at 77-78. In addition, the Registration Statement fails to disclose adjustments made to Evercore's *Peer Group Trading Analysis*, specifically: (i) net debt; (ii) preferred equity and minority interest as of April 1, 2020; and (iii) projected EQM common units outstanding.

30.     With respect to the Evercore's *Discounted Distribution Analysis* for EQM, the Registration Statement fails to disclose: (i) the terminal values of EQM; (ii) the inputs and assumptions underlying the use of the range of terminal yields from 9.0% to 12.0%; and (iii) the inputs and assumptions underlying the use of the cost of equity discount rates for EQM of 8.75% to 9.75% and 10.0% to 15.0%.

31.     With respect to Evercore's *Precedent Merger and Acquisition Transactions Analysis* for EQM, the Registration Statement fails to disclose the individual multiples Evercore utilized for each of the transactions included in the analysis. *See* Registration Statement 79-81. In addition, the Registration Statement fails to disclose adjustments made to the analysis, specifically: (i) net debt; (ii) preferred equity and minority interest as of April 1, 2020; and (iii) projected EQM common units outstanding.

32. With respect to the Evercore's *Peer Group Trading Analysis* for Equitrans, the Registration Statement fails to disclose the individual multiples Evercore utilized for each of the companies included in the analysis. *See* Registration Statement at 81-82. In addition, the Registration Statement fails to disclose adjustments made to the analysis, specifically: (i) net debt; (ii) preferred equity and minority interest as of April 1, 2020; and (iii) projected Equitrans common stock outstanding.

33. With respect to the Evercore's *Discounted Dividend Analysis* for Equitrans, the Registration Statement fails to disclose: (i) the terminal values of Equitrans; (ii) the inputs and assumptions underlying the use of the range of terminal yields from 7.5% to 10.5%; and (iii) the inputs and assumptions underlying the use of the cost of equity discount rates for Equitrans of 8.0% to 9.0% and 10.0% to 15.0%.

34. With respect to Evercore's *Precedent Merger and Acquisition Transaction Analysis* for Equitrans, the Registration Statement fails to disclose the individual multiples Evercore utilized for each of the transactions included in the analysis. In addition, the Registration Statement fails to disclose adjustments made to the analysis, specifically: (i) net debt; (ii) preferred equity and minority interest as of April 1, 2020; and (iii) projected Equitrans common stock outstanding.

35. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special unitholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with unitholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Registration Statement with the intention of soliciting unitholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's unitholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and

disclose such information to unitholders although they could have done so without extraordinary effort.

40. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of EQM within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of EQM, and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of EQM, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of EQM, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

46. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 31, 2020

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*